**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| TREMAINE M. HADDEN, | : | CIV. NO. 22-1600 (RMB-EAP) |
|  | : |  |
| Plaintiff | : | **OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| RICHARD HERSHEY, et al., | : |  |
|  | : |  |
| Defendants | : |  |

**RENÉE MARIE BUMB, United States District Judge**

Plaintiff Tremaine Hadden, a state pretrial detainee confined in Camden County Correctional Facility, brings this pro se civil rights action under 42 U.S.C. § 1983 and New Jersey state law. (Am. Compl., Docket No. 2.)  Plaintiff filed an application to proceed *in forma pauperis* ("IFP") which establishes his financial eligibility to proceed without prepayment of fees under 28 U.S.C. § 1915. (Docket No. 1-2.)

When a prisoner is permitted to proceed without prepayment of the filing fee or when a prisoner files a civil action regarding prison conditions and/or seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) and 42 U.S.C. § 1997e(c)(1) require courts to review the complaint and *sua sponte* dismiss any claims that are: (1) frivolous or

malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. For the reasons discussed below, the Court will permit the amended complaint to proceed in part and dismiss it in part.

## I.  *SUA SPONTE* DISMISSAL

Courts must liberally construe pleadings that are filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Thus, "a pro se complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (internal quotation marks omitted). "Court personnel reviewing pro se pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions." *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir.2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir.2000)). Therefore, the Court relies on precedent discussing the Rule 12(b)(6)

2

motion to dismiss standard for failure to state a claim. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

## II.    DISCUSSION

### A.    The Amended Complaint

Plaintiff alleges the following facts in his amended complaint (Docket No. 2), accepted as true for purposes of screening for dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1). The Court notes at the

outset that much of what Plaintiff alleges is conclusory and without a clear basis for reaching such conclusions.

### 1.   The shooting of Detective Richard Hershey

On April 25, 2020, Plaintiff further alleges New Jersey State Police Officer Detective Richard Hershey was investigating a home invasion and assault in Pittsgrove Township, New Jersey. When Detective Hershey left the residence, he saw five or six vehicles arriving, and a group of people started to walk toward him. He drew his weapon and told everyone to get on the ground or he would shoot. When people ran, Detective Hershey fired at them, and Chiyana Diaz was shot in the back of the leg. Detective Hershey also fired at Plaintiff's car as he drove away. When a Dodge Challenger passed in front Detective Hershey, he heard a gunshot and saw a muzzle flash from the window. Detective Hershey was shot in the leg and buttock. An investigation later showed that Kareem Warner had fired on Detective Hershey. A witness who had implicated Plaintiff recanted, stating that she had been coerced by police.

### 2.   Plaintiff's arrest

On April 30, 2020, Detective Jeffrey Lorman wrote a false affidavit in support of a warrant for Plaintiff's arrest. Plaintiff attached a copy of this warrant, # 0613-W-2020-000233, to his amended complaint. (Exhibit B, Docket No. 2-2 at 6.) In his affidavit, Detective Lorman stated:

> On April 25, 2020, New Jersey Attorney General's
> Shooting Response Team investigated the Trooper
> involved shooting which involved Detective Hershey of

4

> the New Jersey State Police. During this incident,
> Detective Hershey was struck by gunfire. During the
> investigation, multiple independent statements identified
> Hadden as having a handgun on scene. During follow up
> interviews, multiple eyewitnesses advised that Hadden was
> observed firing a handgun from the driver's seat of a
> Chevrolet Malibu in the direction of Detective Hershey.

(Am. Compl., Exhibit B; Docket No. 2-2 at 6.) Plaintiff alleges Detective Lorman

lied by stating that multiple eyewitnesses saw Plaintiff firing a handgun from the

driver's seat of a Chevrolet Malibu. Municipal Court Judge Lauren Van Embden

approved the complaint warrant based on Detective Lorman's affidavit. Three hours

after Detective Lorman wrote this affidavit, Deputy Attorney General ("DAG")

Rachel Weeks instructed Officer Alison Akke to redo the probable cause affidavit

because it contained the wrong court code. Officer Akke changed Detective

Lorman's statement and then, Plaintiff alleges, forged his signature.  In the new

affidavit, Warrant #0613-W-2020-234, Officer Akke wrote:

> On April 25, 2020, New Jersey Attorney General's
> Shooting Response Team responded to the officer
> involved shooting involving New Jersey State Police
> Detective Hershey. During this incident, Detective
> Hershey was struck by gunfire. During the investigation, a
> witness at the scene of the shooting stated Hadden
> possessed a gun. Multiple witnesses stated that Hadden
> told them that he (Hadden) fired a handgun from the
> driver's seat of a Chevrolet Malibu in the direction of
> Detective Hershey. Hadden admitted to driving the
> Chevrolet Malibu to the scene of the shooting. The Chevy
> Malibu was recovered  and search[ed] and found to have
> damage from gun shots as well as the presence of lead
> within the vehicle consistent with a gun having been fired
> inside.

5

(Am. Compl., Exhibit D; Docket No. 2-2 at 10.) Judge Van Embden approved the

new complaint on the same day, allegedly without reading the new statement. The

Court, however, notes that Plaintiff, not present when the warrant was signed, has

no good faith basis to make such allegation. The first complaint warrant, # 0613-W-

2020-000233, was dismissed on May 27, 2020. Plaintiff attached to his complaint a

May 27, 2020 letter signed by Salem County Prosecutor John T. Lenahan, which

states, in part:

> PURSUANT TO R.3:25-1 THE ABOVE MATTER HAS
> BEEN ADMINISTRATIVELY DISMISSED ON MAY
> 27, 2020. A REPORT HAS BEEN FILED WITH THE
> ASSIGNMENT JUDGE OF SALEM COUNTY. OPEN
> CHARGES STILL EXIST

(Am. Compl., Exhibit B; Docket No. 2-2 at 5.)[1]

### 3.    Plaintiff's criminal proceeding

In the discovery phase of Plaintiff's criminal proceeding, DAG Weeks[2]

produced *Brady* material to the defense, including a partial statement by Lieutenant

---

[1]  New Jersey Court Rule 3:25-1 provides:

> (a) Pre-indictment. A complaint may be administratively
> dismissed by the prosecutor without presentation to the
> grand jury in which event said prosecutor shall report the
> dismissal and the basis therefor to the Assignment Judge
> and shall notify the defendant.

[2] Plaintiff submits that he will amend at a later date to bring a claim of malicious
prosecution against DAG Weeks.  (Am. Compl., Docket No. 2 at 14.) He also
describes a claim of selective prosecution against DAG Weeks, but he has not named
her as a defendant in this action. (Am. Compl., Docket No. 2 at 32.)  If he wishes to

Glenn Garrels of the New Jersey Department of Law and Public Safety: "Hershey shooting: arrested over 25 people to get revenge for Officer Hershey. And all unit members have since paid off their houses[.]" (Am. Compl. Ex. A; Docket No. 2-2 at 2.)

Plaintiff hired Ronald B. Thompson, Esq. as his criminal defense attorney. His allegations against Thompson are many. Thomas was angry at Plaintiff for causing another inmate to fire him, costing him $13,000. Thompson sabotaged Plaintiff's defense at every turn. He also failed to file a tort claim on Plaintiff's behalf, regarding an assault by a corrections officer.

### 4.    Plaintiff's pretrial detention in Salem County Jail

On June 14, 2020, Plaintiff was confined in Salem County Jail awaiting his trial. Corrections Officer Sexton heard a loud banging noise. She went to Plaintiff's cell to charge him with banging on his door. She became angry when Plaintiff would not sign the charge sheet, and she called for a sergeant. Sergeant Fisher arrived and assaulted Plaintiff while calling him a cop shooter. He threatened to make Plaintiff disappear like George Floyd. Plaintiff suffered head trauma and severe back pain and did not receive medical attention until three days later. Internal Affairs was notified but never investigated the incident.

On June 17, 2020, Plaintiff wanted to use the phone in Salem County Jail. Federal detainees are housed in Salem County Jail and believe they have should

---

bring a selective enforcement claim, he must file a supplemental or amended complaint.

have priority over state detainees for use of the phone and other privileges.

Corrections Officers are aware that this rivalry often causes disputes between federal

and state detainees, but they do not intervene. S.C.O. Simpkens observed a verbal

altercation between Plaintiff and five federal inmates when Plaintiff tried to use the

phone.  The verbal altercation turned violent, and the inmates assaulted Plaintiff. To

avoid being charged with fighting, Plaintiff did not fight back. When Plaintiff arrived

in the infirmary for treatment,  Lieutenant Templeton strip-searched him, despite the

fact that he was not charged with fighting the other inmates and was not required to

be strip searched by any other jail policy. In retaliation, Plaintiff was transferred to

Camden County Jail.  The inmates who assaulted Plaintiff were from Camden and

might arrange for retaliation because they thought Plaintiff had charged them with

fighting. For relief, Plaintiff seeks monetary damages and unspecified equitable

remedies against defendants in their individual and official capacities.

### B.    Claims Under 42 U.S.C. § 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of

his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory ...
> subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress….

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

### 1.    Section 1983 claims for money damages against state actors in their official capacities

The Supreme Court has explained:

> absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity. That is so because … a judgment against a public servant in his official capacity imposes liability on the entity that he represents....

*Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (internal citations and quotations omitted).  Plaintiff may bring his § 1983 claims for damages against state actors in their personal/individual capacities. *Id.* at 165-66.  The Court will dismiss with prejudice the § 1983 claims for damages against defendants in their official capacities.

### 2.    Fourth Amendment Excessive Force Claims against Detective Hershey

"'To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure [by law enforcement] occurred and that it was unreasonable under the circumstances.'" *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020)

(quoting *Lamont* [*v. New Jersey*], 637 F.3d [177, ] 182-83 [3d Cir. 2011].) "The application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021). A seizure by force lasts only as long as the application of force. *Id.* at 998.

Plaintiff alleges Detective Hershey indiscriminately shot into a group of people, and he fired on Plaintiff's car when Plaintiff drove away. Because there was no application of physical force to Plaintiff's body when Detective Hershey allegedly fired at his car, Plaintiff fails to state an excessive force claim.

Furthermore, Plaintiff lacks standing to bring an excessive force claim on behalf of Chiyana Diaz, who was struck by gunfire. "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute[]…." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). To have standing, "[t]he complainant must allege an injury to himself that is 'distinct and palpable[.]'" *Id.* at 42 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, (1990) (internal citations omitted)). The shooting of Chiyana Diaz did not cause injury to Plaintiff, and Plaintiff does not allege as such. Therefore, Plaintiff's excessive force claims against Detective Hershey will be dismissed with prejudice because amendment is futile.

    **3.**    **Fourth Amendment false arrest and false imprisonment claims against Detective Jeffrey Lorman, Officer Alison Akke and Lieutenant Garrels and his entire unit**

"[A] plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and  (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997)). Plaintiff's false arrest and false imprisonment claims may proceed against Detective Lorman and Officer Akke based on his allegation that they falsified the arrest warrants.[3]

Lieutenant Garrels' partial written statement, that 25 people were arrested in revenge for Detective Hershey's shooting, does not establish that Plaintiff himself was arrested without probable cause or that Garrels or his entire unit were personally involved in Plaintiff's arrest. "A defendant in a civil rights action must have personal

---

[3] Plaintiff alleges that Detective Lorman and Officer Akke conspired to convince Judge Van Emden to sign the false complaint warrants. He further alleges a conspiracy by unnamed officers to badger a witness into implicating Plaintiff in Detective Hershey's shooting. To assert a conspiracy claim under § 1983, a plaintiff must allege facts showing "that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). This claim will be dismissed without prejudice because the facts, as alleged, do not suggest that Detective Lorman and Officer Akke, or any other officers, "reached an understanding" to badger one or more witnesses into giving false statements or that they reached an understanding to falsify the first or second warrant. The conspiracy claim will be dismissed without prejudice.

involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). This claim will be dismissed without prejudice.

Plaintiff has also named the State Police Director as a defendant, presumably as the supervisor of the arresting officers. To state a § 1983 claim against a supervisor, a plaintiff must allege facts showing the supervisor: (1) "established and maintained a policy, practice or custom which directly caused the constitutional harm" and acted "with deliberate indifference to the consequences." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).  Alternatively, a plaintiff may allege that a supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the person[] in charge, had knowledge of and acquiesced in their subordinates' violations." *Id.*  When § 1983 liability is premised on failure to train, a plaintiff must identify the deficiency in the training program that caused the plaintiff's injury. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted). Plaintiff has not alleged facts establishing how the State Police Director was responsible for Plaintiff's false arrest and imprisonment.  Therefore, this claim will be dismissed without prejudice.

### 4. Sixth Amendment ineffective assistance of counsel claim against Ronald Thompson

"Criminal defense attorneys, including public defenders, do not act "under color of state law" and are not liable under section 1983 when performing traditional functions as defense counsel." *Nelson v. Dauphin Cty. Pub. Def.*, 381 F. App'x 127, 128

(3d Cir. 2010) (quoting *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ); *Newton v. City of Wilmington*, 676 F. App'x 106, 108 (3d Cir. 2017). Plaintiff's Sixth Amendment claim against Thompson arises out of his actions and inactions in his role as Plaintiff's criminal defense counsel. Therefore, the Court will dismiss with prejudice the Sixth Amendment claims against Thompson under § 1983.

### 5.     Fourteenth Amendment excessive force and retaliation claim

Plaintiff's Fourteenth Amendment excessive force claim against Sergeant Fisher may proceed at this time.[4]  Plaintiff also alleges that Sergeant Fisher assaulted him in retaliation for shooting Detective Hershey. "[G]overnment actions, … may … be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)  *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir.2000) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 386 (6th Cir.1999) (*en banc*)). Plaintiff, however, has not alleged that Fisher's assault on him was motivated by Plaintiff's exercise of a constitutional right but rather as revenge for shooting a police officer. Therefore, the retaliation claim will be dismissed without prejudice.

### 6.     Failure to investigate the assault on Plaintiff by Sergeant Fisher

---

[4]  In determining a due process claim of excessive force "objective reasonableness [of the force used] turns on the 'facts and circumstances of each particular case.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Therefore, such claims may be unsuitable for dismissal prior to discovery of all the circumstances. This, however, does not relieve Plaintiff of his obligation under Rule 11 to have a good faith basis for his claim.

Plaintiff alleges the Internal Affairs Department at Salem County Jail was aware of Sergeant Fisher's assault on Plaintiff but failed to investigate or take any action. There is no recognized constitutional right to an internal investigation by the victim of excessive force by law enforcement. *See Kamienski v. Ford*, No. 11CV03056PGSDEA, 2019 WL 4556917, at *12 (D.N.J. Sept. 17, 2019), *aff'd*, 844 F. App'x 520 (3d Cir. 2021) ("the failure to investigate does not constitute clearly established due process rights"). Therefore, this claim, presumably directed at Warden Cuzzupe and the deputy warden, will be dismissed without prejudice.

### 7.    Fourteenth Amendment failure to intervene

Plaintiff alleges S.C.O. Simpkens failed to intervene at Salem County Jail when Plaintiff engaged in a verbal altercation with five inmates who then assaulted him. "Under the Due Process Clause, prison officials have a duty to 'take reasonable measures to guarantee the safety of the inmates' and 'protect prisoners from violence at the hands of other prisoners.'" *Brown v. Smith*, No. 21-3127, 2022 WL 2383609, at *1 (3d Cir. July 1, 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "A prison official cannot be found liable for failure to protect an inmate unless the official was deliberately indifferent to the risk." *Id.* (citation omitted). "[A]n official displays deliberate indifference if, when an attack occurs, he or she has 'a realistic and reasonable opportunity to intervene" but 'simply refuse[s] to do so.'" *Id.* at *2 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)).

Plaintiff has alleged that S.C.O. Simpkens failed to intervene, not in the assault, but in the verbal altercation. If she had done so, he alleges the assault would

not have occurred. Courts have not recognized a constitutional duty to intervene in a verbal altercation between inmates.  Therefore, this claim will be dismissed without prejudice, as will the failure to train claims against Warden Cuzzupe and the deputy warden.

### 8.    Fourteenth Amendment failure to protect

Plaintiff alleges the jail administration, whom this Court construes as meaning Warden Cuzzupe and the deputy warden, failed to protect him by not housing state pretrial detainees separately from federal detainees or convicted prisoners, when it is well known that the status of these groups causes disputes, and staff are known not to intervene in such disputes.  "[A]n official demonstrates deliberate indifference to the risk of inmate-on-inmate violence if, before an attack, the official knows an inmate faces "an excessive risk of harm" from another prisoner but does nothing to prevent the assault." *Brown v. Smith*, No. 21-3127, 2022 WL 2383609, at *2 (3d Cir. July 1, 2022). Plaintiff's allegation of conflicts between state and federal inmates is insufficient to allege deliberate indifference to an excessive risk of harm because Plaintiff has not described the frequency of such disputes turning violent, as would permit a finding of deliberate indifference to an excessive risk of harm. Therefore, this claim will be dismissed without prejudice.

### 9.    Fourteenth Amendment inadequate medical care

Plaintiff alleges that he did not receive medical care until three days after he was assaulted by Sergeant Fisher and suffered head trauma and severe back pain. Plaintiff, however, has not alleged that any particular defendant denied his request

for medical care. Insofar as Plaintiff seeks to hold Warden John Cuzzupe and the deputy warden liable, he has not alleged their personal involvement in refusing to provide him medical care after the assault or that any specific deficiency in training caused him not to receive medical care. *See Parkell*, 833 F.3d 313, 330 (3d Cir. 2016) (describing § 1983 supervisory liability claims). Therefore, Plaintiff's Fourteenth Amendment inadequate medical care claims will be dismissed without prejudice.

### 10.    Fourth Amendment unreasonable strip search

Plaintiff alleges that Lieutenant Templeton subjected him to an unreasonable strip search when he arrived at the infirmary after being assaulted by five inmates. Plaintiff alleges a strip search was not required under any of the jail's policies because he was not charged with fighting. Instead, he alleges the strip search was retaliatory, but he does not explain how. The Supreme Court has addressed the application of the Fourth Amendment to strip searches in correctional facilities. "[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012)  (quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of retained constitutional rights of both convicted prisoners and pretrial detainees")). Courts will ordinarily defer to the judgment of correction officials on whether a strip search policy is reasonably related to legitimate security interests. *Id.* (citations omitted).

Plaintiff has not alleged the basis of his knowledge that he was strip searched outside of any jail policy, nor he has alleged that Lieutenant Templeton knew he would not be charged with fighting. The Court will dismiss this claim without prejudice. The retaliation claim will also be dismissed without prejudice because Plaintiff did not allege he was retaliated against for exercising a constitutional right. *See Mitchell*, *supra*. The supervisory liability claims against Warden Cuzzupe and the deputy warden will also be dismissed for failure to identify a specific deficiency in the training program.

### 11. Retaliatory transfer

Plaintiff alleges he was transferred to Camden County Jail in retaliation by Salem County Jail staff who knew he might be targeted by inmates at that facility. Plaintiff does not allege any particular defendant caused his transfer, nor does he allege that the transfer was motivated by retaliation for his exercise of a constitutional right. Lacking such allegations, Plaintiff fails to state a constitutional tort claim, *see Mitchell, supra*, and this claim will be dismissed without prejudice.

### C. State Law Claims

#### 1. Legal malpractice against private attorney

Plaintiff alleges a claim of legal malpractice against his criminal defense attorney, Roland Thompson. In New Jersey, exoneration of a criminal defendant is required before a legal malpractice claim accrues against a criminal defense attorney. *See Rogers v. Cape May Cnty. Off. of Pub. Def.*, 208 N.J. 414, 425 (2011). "[A]llowing the

17

accrual of a legal malpractice action based on negligent criminal representation while the 'ultimate criminal disposition is still pending,' would lead to the unavoidable filing of an avalanche of ultimately unsustainable legal malpractice claims." *Id.* at 426 (quoting *McKnight v. Office of Public Defender*, 936 A.2d 1036 (N.J. Super. Ct. App. Div. 2007) (Stern, P.J.A.D., dissenting)). Plaintiff has not alleged that he was exonerated of the charges defended by Attorney Thompson. Therefore, this claim will be dismissed without prejudice as premature.

Plaintiff also alleges that Attorney Thompson failed to file a timely tort claim notice regarding his state tort claim against Sergeant Fisher. To state a claim of legal malpractice in a civil action in New Jersey, "a plaintiff must allege (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney; (2) the breach of that duty by the defendant; and (3) proximate causation of the damages claimed by the plaintiff." *Marenbach v. Land*, No. CV 16-9084 (JBS-AMD), 2018 WL 4100047, at *2 (D.N.J. Aug. 27, 2018); (citing *Jerista v. Murray*, 883 A.2d 350, 359 (N.J. 2005)). To show proximate causation of damages, a plaintiff

> must 'establish the recovery [that] the client would have obtained if malpractice had not occurred.'" *Polidoro v. Saluti*, 675 F. App'x 189, 190–91 (3d Cir. 2017) (quoting *Frazier v. New Jersey Mfrs. Ins. Co.*, 667 A.2d 670, 676 (N.J. 1995) ). To do so, a plaintiff may "proceed by way of a 'suit within a suit' in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred." *Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.*, 845 A.2d 602, 611-12 (N.J. 2004). Specifically, the plaintiff must show by a preponderance of the evidence that, but for the professional malpractice or other misconduct, "(1) he would have recovered a judgment in the action against the main defendant, (2) the

amount of that judgment, and (3) the degree of
collectability of such judgment." *Id.* (quoting *Hoppe v.
Ranzini*, 385 A.2d 913, 917 (N.J. Super. Ct. App. Div.
1978) ).

*Marenbach*, 2018 WL 4100047, at \*3.  Although Plaintiff need not prove his case at

the pleading stage, his allegation that Attorney Thompson failed to timely file a

notice of tort claim with respect to the alleged excessive force against him by

Sergeant Fisher is insufficient to establish the elements of legal malpractice under

New Jersey law. This claim will be dismissed without prejudice.

### 2.   Negligence, Intentional and Negligent Infliction of Emotional Distress and Defamation

In addition to his § 1983 claims, Plaintiff seeks to bring tort claims of

negligence, intentional and negligent infliction of emotional distress and defamation

against the various defendants, whom are public employees in the State of New

Jersey.  Prior to bringing a personal injury claim against public employees under the

New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:1 *et seq.*, a plaintiff must file a

notice of claim not later than the 90th day after accrual of the cause of action.

N.J.S.A. 59:8-8. A plaintiff is "forever barred from recovering against a public entity

or public employee if he "failed to file the claim with the public entity within 90 days

of accrual of the claim except as otherwise provided in N.J.S. 59:8-9[.]" *Id.* The claim

must be filed "with (1) the Attorney General or (2) the department or agency

involved in the alleged wrongful act or omission." N.J.S.A. 59:8-7. "A claimant who

fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act,

19

may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." N.J.S.A. § 59:8-9.

Based on the allegations in the amended complaint, all of Plaintiff's tort claims against public employees accrued more than one year prior to filing the instant complaint. Plaintiff has not alleged that he timely satisfied the notice of claim requirement of the TCA. Therefore, the Court will dismiss Plaintiff's state tort claims without prejudice. *See Melber v. United States*, 527 F. App'x 183, 186 n. 2 (3d Cir. 2013) (noting the New Jersey Superior Court Appellate Division has suggested the TCA claim notice requirement is jurisdictional) (citing *State v. J.R.S.*, 939 A.2d 226, 229 (N.J. Ct. App. Div. 2008).

## III.   CONCLUSION

For the reasons stated above, the Court will permit the complaint to proceed, in part, and dismiss the complaint in part. The Court denies Plaintiff's request for pro bono counsel without prejudice.[5] An appropriate order follows.

DATE:  **August 11, 2022**

---

[5] At this time, Plaintiff has established his ability to perform legal research and draft an extensive complaint regarding his arrest and subsequent pretrial detention. *See Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993). While Plaintiff is not legally trained and is unable to afford counsel, he appears capable of self-representation at this time. If circumstances change as the case proceeds, Plaintiff may reapply for pro bono counsel.

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**